**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

ROSLYN BROWN, and R.Z., a Minor, through )
her Mother and Next Friend, Roslyn Brown, )
                                     )
        Plaintiffs,                  )
                                     )
v.                                    )     Case No. 4:17-cv-1542
                                   )
CITY OF PINE LAWN, MISSOURI,     )     **JURY TRIAL DEMANDED**
FORMER PINE LAWN LIEUTENANT     )
STEVEN BLAKENEY,                 )
PINE LAWN POLICE OFFICER         )
LAWRENCE FLEMING,             )
PINE LAWN POLICE OFFICER         )
BRIAN BRITTON,                   )
PINE LAWN POLICE OFFICER         )
FELICIA SHELTON,                )
PINE LAWN POLICE OFFICER         )
STEVEN LOWMAN, and             )
PINE LAWN HOUSING INSPECTOR    )
RAYMOND WINSTON,             )
                                   )
        Defendants.             )

**FIRST AMENDED COMPLAINT**

**INTRODUCTORY STATEMENT**

    1.     Plaintiff Roslyn Brown and Plaintiff R.Z., a Minor, through her Mother and Next Friend, Roslyn Brown (the "Plaintiffs"), bring this civil action seeking money damages against the City of Pine Lawn; its police officers Steven Blakeney, Lawrence Fleming, Brian Britton, Felicia Shelton, and Steven Lowman; and Pine Lawn Housing Inspector Raymond Winston, all of whom on May 19, 2014—while acting individually and in concert under color of law and on their authority as officials of the City of Pine Lawn—conspired to unlawfully invade the Brown residence and place Ms. Brown under arrest using excessive force. These acts were carried out in front of Ms. Brown's minor child, Plaintiff R.Z. Defendants then unlawfully imprisoned Ms.

Brown in a Pine Lawn Jail cell and R.Z. in an interrogation room as ransom to lure the child's father to the Pine Lawn Jail, all in violation of the United States Constitution and the laws of the State of Missouri.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331. Plaintiffs further invoke the Court's supplemental jurisdiction to hear and decide claims arising under Missouri state law, pursuant to 28 U.S.C. § 1367.

3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4.     At all times relevant herein, Plaintiffs Roslyn Brown and R.Z. were United States citizens and residents of the City of Pine Lawn, State of Missouri.

5.     Plaintiff Roslyn Brown ("Ms. Brown") is a 49 year-old African-American woman, and mother of Plaintiff R.Z.

6.     Plaintiff R.Z. is a Minor child. At the time of the events described in this Complaint, R.Z. was eleven (11) years old.

7.     Defendant City of Pine Lawn, Missouri ("Pine Lawn") is a city in the State of Missouri duly incorporated and organized under the laws of the State of Missouri.

8.     At all times relevant herein, Defendants Steven Blakeney, Steven Lowman, Lawrence Fleming, Brian Britton, and Felicia Shelton (the "Pine Lawn Officers") were duly commissioned police officers of the State of Missouri and law enforcement officers employed by Pine Lawn. They are sued in their individual capacities.

9.      At all times relevant herein, Defendant Raymond Winston was the Housing Inspector employed by the City of Pine Lawn. Defendant Winston is sued in his individual capacity.

10.      At all times relevant herein, Defendants acted under color of the laws, statutes, ordinances, and regulations of the City of Pine Lawn, and State of Missouri.

11.      At all times relevant herein, except as explicitly stated, Defendants acted under the management, regulations, policies, customs, practices and usages of Pine Lawn pursuant to their authority as law enforcement officers and public officials of Pine Lawn.

## WAIVER OF SOVEREIGN IMMUNITY

12.      At all times relevant herein, Defendant City of Pine Lawn procured and had in effect a policy of insurance to insure itself against claims or causes of action for damages caused by city employees engaged in government functions, including torts and civil rights violations described herein.

13.      The purchase of that insurance constitutes a waiver of sovereign immunity by Defendant City of Pine Lawn up to the policy limit for acts covered by the policy.

## FACTS

14.      On Monday, May 19, 2014, around 5:30 p.m., Pine Lawn Lt. Steven Blakeney ("Defendant Blakeney") approached the residence at 3743 Salome Avenue in the City of Pine Lawn, State of Missouri (the "Residence").

15.      Lt. Blakeney purported to seek information regarding the whereabouts of Ronald Zimmerman, who is Plaintiff R.Z.'s father and who owns the Residence.

16.      Defendant Blakeney was accompanied by several other Pine Lawn Officers: Detective Lawrence Fleming ("Defendant Fleming"), Officer Brian Britton ("Defendant

Britton"), Officer Felicia Shelton ("Defendant Shelton"), and Officer Steve Lowman ("Defendant Lowman").

17.     Ms. Brown came to the door of the Residence and stated that she did not know where Mr. Zimmerman was.

18.     Defendant Blakeney began yelling at Ms. Brown, "Where is he?!" and demanding that she give Defendant Blakeney information about Mr. Zimmerman. Defendant Blakeney threatened to write Ms. Brown a summons if she did not provide the information.

19.     Defendant Blakeney and the other Pine Lawn Officers had no probable cause to believe that Ms. Brown had committed any offense.

20.     Defendant Blakeney further threatened that Ms. Brown would have to pay significant sums of money and that Pine Lawn officers and employees would keep coming back to harass her if she did not provide him information.

21.     The other Pine Lawn Officers stood by and observed as Defendant Blakeney made these threats.

22.     Ms. Brown did not have the information Defendant Blakeney demanded.

23.     Defendant Blakeney then became louder and more aggressive, which terrified Ms. Brown because Defendant Blakeney had also threatened to kill Mr. Zimmerman in the past.

24.     Defendant Blakeney told Ms. Brown he was going to write her a summons and demanded that Ms. Brown go into the house and produce her identification.

25.     Ms. Brown turned away from the door to retrieve her identification and closed the glass storm door behind her, leaving the main door open so she could remain visible.

26.     Defendant Blakeney then charged at the closed glass storm door and tried to break it down, breaking the locking mechanism in the process.

27.     Shocked and frightened, Ms. Brown came back out onto the porch, closing both doors behind her, and Defendant Blakeney immediately shouted "Arrest her!" at which time Defendant Britton arrested Ms. Brown.

28.     The Pine Lawn Officers did not have probable cause to arrest Ms. Brown.

29.     Defendant Shelton assisted in the arrest of Ms. Brown, escorting her to the Pine Lawn patrol car and carrying Ms. Brown's cane.

30.     Defendants Lowman and Fleming stood idly by watching the unlawful arrest of Ms. Brown and not seeking to intervene in any way.

31.     The Pine Lawn Officers were fully aware that Ms. Brown was being arrested for the unlawful purpose of attempting to make contact with Mr. Zimmerman.

32.     When Defendant Britton executed the arrest of Ms. Brown at Defendant Blakeney's order, he used severe and unreasonable force in yanking Ms. Brown's arms behind her back and made her walk barefoot to the patrol car, without her walking cane and wearing only pajama shorts and a tank top.

33.     When both Ms. Brown and Defendant Shelton told Defendant Britton that Ms. Brown needed her shoes and cane to walk safely and comfortably, Defendant Britton responded, "She's gonna walk today!"

34.     When Defendant Britton forcibly handcuffed Ms. Brown's hands, they exacerbated Ms. Brown's carpal tunnel symptoms, re-injuring her arm, spraining her right elbow, and aggravating her peripheral neuropathy, all of which caused excruciating pain.

35.     This pain increased and persisted when the officers forced Ms. Brown to sit in the back of a police car with her arms still handcuffed behind her, smashed between her back and the car seat.

36.     Additionally, by making Ms. Brown walk barefoot on the gravel and hard ground, the Pine Lawn Officers exacerbated Ms. Brown's existing nerve damage symptoms in her feet and legs, causing excruciating shooting pain in her feet and legs.

37.     As Ms. Brown was being taken to the patrol car, Defendant Blakeney entered the Residence, closely followed by Defendant Fleming.

38.     Once Ms. Brown was in the patrol car, all of the Pine Lawn Officers entered the Residence and began ransacking it.

39.     Housing Inspector Raymond Winston ("Defendant Winston") arrived to the Residence shortly after Ms. Brown was placed in the patrol car and joined the Pine Lawn Officers in raiding the home.

40.     From the patrol car, Ms. Brown asked Defendant Shelton if she could make arrangements for her eleven-year-old daughter R.Z.

41.     When Defendant Shelton said that she could, Ms. Brown shouted across the street to a neighbor named Ms. Ritchie, who had come outside to her own front porch after hearing the commotion, asking Ms. Ritchie to come take R.Z. to Ms. Ritchie's house to be safe.

42.     R.Z. was at that moment sitting on the porch of her grandfather's house next door at 3741 Salome, crying with her pet dog in her lap and watching the actions of the Pine Lawn Officers and Defendant Winston in terror.

43.     While Ms. Brown was in the Pine Lawn police car, Defendant Blakeney went to the residence next door at 3741 Salome Avenue.

44.     Ms. Ritchie had walked across the street to retrieve R.Z., who had now walked into the yard to approach Ms. Ritchie.

45.     As R.Z. approached Ms. Ritchie in the yard, Defendants Blakeney and Britton

intercepted R.Z., forcefully grabbed her by the upper left arm, and led her into the Residence, which the other Defendants were still raiding.

46.     Defendant Blakeney yelled at R.Z., "Where's your father? Where does he work? I know you know something!"

47.     Terrified and crying, R.Z. responded that she did not know.

48.     Ms. Brown heard Defendant Blakeney tell the other Defendants that R.Z. was Ronald Zimmerman's daughter. Defendants Blakeney and Britton took R.Z. inside the Residence, which was still being torn up and raided by the Defendants.

49.     Some of the Defendants were smoking cigarettes inside and outside of the home, which exacerbated R.Z.'s chronic asthma and caused R.Z. to cough frequently and feel shortness of breath.

50.     The Pine Lawn Officers and Defendant Winston held R.Z. in place and forced her to watch the scene unfold inside the Residence.

51.     Officer Britton then forced R.Z. to unlock and access Ms. Brown's cell phone, without Ms. Brown's consent, for the purpose of locating Ronald Zimmerman.

52.     While searching Ms. Brown's phone, Officer Britton answered an incoming call from Ronald Zimmerman without permission to do so, and in front of R.Z., verbally threatened that "Everyone's going to jail today. Your daughter is going to foster care. What kind of father are you? Come and get your daughter."

53.     R.Z. feared for the safety and well-being of herself, Ms. Brown, and her father, Ronald Zimmerman.

54.     At one point, Defendants Winston and Shelton approached Ms. Brown, who was handcuffed in the back of the patrol car, and told her that she needed to give them permission to

enter the home.

55.     Ms. Brown replied that she would not do so, especially since she was not the homeowner.

56.     Defendant Winston threatened Ms. Brown by stating that he would condemn the home if she did not consent, and she would not be able to get back inside to get her belongings out.

57.     Defendant Shelton added that Ms. Brown would never be able to get back inside the house.

58.     Fearful that she would lose access to her belongings and her daughter would not be able to get the clothes and shoes that she needed to attend school, Ms. Brown acceded to the coercion and consented to their entry.

59.     Defendant Britton came out to the police car and informed Ms. Brown that R.Z. would be coming to the Pine Lawn Jail as well.

60.     Ms. Brown objected, stating that Ms. Ritchie was permitted to have custody of R.Z. at that time.

61.     Defendant Britton stated that he was "just following orders" and that if Ms. Brown "didn't like it, [she] could just take it to the next level."

62.     Ms. Brown believed Defendant Britton's statement was made sarcastically, and that "take it to the next level" meant address the issue with Britton's superior officer, Defendant Blakeney, or another official in the City of Pine Lawn.

63.     Defendant Britton then went inside the Residence and got R.Z., escorting her to the police car where Ms. Brown was locked in the back seat.

64.     Defendant Britton placed R.Z. in the front seat of the Pine Lawn police car.

65.     Ms. Brown observed that R.Z. was fearful and silent, as if in shock.

66.     Ms. Brown tried to comfort R.Z. by telling her that "everything is going to be okay" and that "we didn't do anything wrong." The Pine Lawn Officers then took Ms. Brown and R.Z. to the Pine Lawn Jail, with Defendant Britton driving the patrol car.

67.     At the Pine Lawn Jail, the Defendants Britton and Fleming separated R.Z. from her mother by placing R.Z. in an interrogation room. Ms. Brown was placed in a holding cell.

68.     Ms. Brown stated to Detective Fleming, "You can't talk to her without me in there. She's a minor!"

69.     Detective Fleming ignored Ms. Brown's assertions, placed R.Z. in the interrogation room, and walked out of the interrogation room.

70.     At the Pine Lawn Jail, Defendants Loman and Shelton stated that they were confused about the charges on which to book Ms. Brown into the jail.

71.     Ms. Brown refused to sign the housing citations, reiterating that she was not the homeowner. Defendant Loman told her that she was not leaving until she signed the citations.

72.     When Defendant Blakeney saw that Defendants Loman and Shelton did not know how to write up the citations, Defendant Blakeney instructed them on what to do and said, "She should have told me where he is."

73.     At one point, Defendant Shelton told Ms. Brown that Defendant Blakeney was "just being an asshole."

74.     After approximately one hour, Robert Zimmerman, R.Z.'s grandfather, arrived at the Pine Lawn Jail to pick up R.Z. and take her into his care.

75.     At that time, Ms. Brown heard Defendant Britton state that the Pine Lawn Officers wanted *Ronald* Zimmerman to pick R.Z. up, and that Pine Lawn was not going to

release R.Z. until Ronald Zimmerman came to the Pine Lawn jail.

76.    Eventually, after several minutes of discussion, the Pine Lawn Officers reluctantly permitted the grandfather Robert Zimmerman to take R.Z. home.

77.    Ms. Brown was placed in a cold cell inside the jail.

78.    While in the cell, Defendant Fleming spoke to Ms. Brown and told her that he would get her out on medical release.

79.    Ms. Brown responded, "Because you know this is not right. I did not do anything."

80.    Ms. Brown remained in the cold holding cell for several hours until she was released on medical recognizance.

81.    Pine Lawn charged Ms. Brown with "Failure to Comply" and thirty-two (32) additional housing-code citations.

82.    Shortly before May 19, 2014, Ms. Brown's doctor had instructed her to keep her right arm in a straight position so that her elbow and wrist would be ready for an upcoming surgery. The surgery had to be delayed for many weeks due to the incident.

83.    Several weeks after May 19, 2014, Ms. Brown and R.Z. witnessed Pine Lawn police cars and officers stationed on their street and near their home, and felt intimidated and endangered.

84.    Pine Lawn eventually dismissed all of the charges, but only after Ms. Brown was forced to spend $750 to hire private counsel.

85.    The actions of the Defendants caused Ms. Brown significant physical injury and pain and suffering, as well as emotional trauma and suffering.

86.    The actions of the Defendants caused Plaintiff R.Z. extreme emotional trauma and

distress, including depression, anxiety, and night terrors, all of which continue to persist and interfere with R.Z.'s daily life.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL USE OF EXCESSIVE FORCE – COGNIZABLE UNDER 42 U.S.C. § 1983
### (By Plaintiff Roslyn Brown against Defendant Britton)

For her cause of action against Defendant Britton in Count I, Plaintiff Roslyn Brown states:

87.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

88.     In effecting the arrest of Ms. Brown, Defendant Britton used an excessive degree of force without cause or justification, which caused Ms. Brown to sustain significant injuries and damages.

89.     The degree of forced used by Defendant Britton was unnecessary and punitive.

90.     Not only did Defendant Britton use extreme force in pulling Ms. Brown's already-injured arms behind her back, but he also forced her to walk barefoot and unassisted despite knowing that Ms. Brown required the assistance of a walking cane.

91.     Ms. Brown had a constitutional right to be free from the use of excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.

92.     The use of force by Defendant Britton was unreasonable, obdurate, wanton, and intentional under the totality of the circumstances, particularly because Ms. Brown was not resisting arrest, was not attempting to escape, was not acting violently or aggressively, or in a manner that posed any obvious danger to herself or anyone else, and therefore was in violation of Ms. Brown's rights under the Fourth and Fourteenth Amendments to the United States

Constitution.

93.     As a direct and proximate result of the actions of Defendant Britton as set forth herein, Ms. Brown sustained painful injuries and damages, exacerbating her carpal tunnel symptoms, re-injuring her arm, spraining her right elbow, and aggravating her peripheral neuropathy.

94.     As a direct and proximate result of Defendant Britton's actions, Ms. Brown has experienced anxiety, night terrors, insomnia, fearfulness, exhaustion, and other symptoms that accompany significant trauma.

95.     As a direct and proximate result of the actions of Defendant Britton's actions, Ms. Brown has suffered and will continue to suffer physical pain and injury, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

96.     The conduct of Defendant Britton was reckless and callously indifferent to the constitutional rights of Ms. Brown, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish Defendant Britton in his individual capacity and to deter him and others from the same or similar transgressions in the future.

97.     If Ms. Brown prevails, she is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Roslyn Brown prays for a judgment against Defendant Britton for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to her physical injury and suffering, medical expenses, and her emotional pain and suffering; for punitive damages; for the costs of suit in this action and reasonable attorneys' fees;

and for such other relief as the Court deems fair and appropriate under the circumstances.

## COUNT II
## UNLAWFUL SEARCH AND SEIZURE – COGNIZABLE UNDER 42 U.S.C. § 1983
### (By Plaintiff Roslyn Brown against all Defendants)

For her cause of action against all Defendants in Count II, Plaintiff Roslyn Brown states:

98.     Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

99.     The Defendants had neither a search warrant nor an arrest warrant for Ms. Brown or Ronald Zimmerman at any point when they searched and seized her property and placed her under arrest.

100.    The Defendants did not have probable cause to conduct any search or seizure of either Ms. Brown's property or her person.

101.    Defendant Blakeney, without cause or provocation, attempted to break down the front door of Ms. Brown's residence.

102.    The Defendants emptied the contents of Ms. Brown's purse and raided her home looking for possible housing violations or for other unlawful purposes.

103.    Defendant Britton forced R.Z. to access Ms. Brown's phone for information about Ronald Zimmerman.

104.    Defendants' failure to promptly obtain a judicial determination of probable cause following Ms. Brown's arrest violated Ms. Brown's right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments.

105.    Defendants made it clear to Ms. Brown that her arrest and the arrest of her daughter were being made solely in the interest of contacting and apprehending Ronald Zimmerman.

106.     The Defendants used the pretext of a Failure to Comply charge and 32 property-related citations to arrest Ms. Brown.

107.     After her arrest, Ms. Brown was held in a cell in the Pine Lawn Jail for several hours before the Defendants released her.

108.     Defendants' actions caused physical injuries to Ms. Brown while unlawfully arresting her, and Ms. Brown remained in pain while detained in the Pine Lawn Jail.

109.     Defendants had no lawful justification to arrest and detain Ms. Brown and did so in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

110.     All Defendants either actively participated in the constitutional violations described in this count or failed to intervene to prevent the constitutional violations despite the knowledge that there was no probable cause to conduct any search or seizure of Ms. Brown's property or person.

111.     As a direct and proximate result of the Defendants' actions, Ms. Brown has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

112.     The acts of Defendants described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of Ms. Brown, thus entitling her to an award of punitive damages against Defendants.

113.     If Ms. Brown prevails, she is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Roslyn Brown prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be

limited to her physical injury and suffering, medical expenses, and her emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT III
## UNLAWFUL SEIZURE – COGNIZABLE UNDER 42 U.S.C. § 1983
### (By Plaintiff R.Z. against all Defendants)

For R.Z.'s cause of action against all Defendants in Count III, Plaintiff R.Z. states:

114.    Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

115.    In addition to unlawfully arresting Ms. Brown, the Defendants removed R.Z. from the safe and familiar custody of her adult neighbor and took her into the custody of the City of Pine Lawn.

116.    While her mother was held in a cell in the Pine Lawn Jail, Defendants held R.Z. against her will in a Pine Lawn interrogation room.

117.    Defendants made it clear to R.Z. that her and her mother's detention was being carried out solely in the interest of contacting and apprehending Ronald Zimmerman.

118.    As a minor, R.Z. experienced acute trauma as a result of Defendants unlawfully detaining her and using her as a pawn to make contact with and apprehend Mr. Zimmerman.

119.    R.Z. was forced to wait alone in an interrogation room for about an hour before her grandfather was allowed to come pick her up.

120.    All Defendants either actively participated in the constitutional violations described in this count or failed to intervene to prevent the constitutional violations despite the knowledge that there was no probable cause or lawful justification to seize R.Z.

121.    As a direct and proximate result of Defendants' actions, R.Z. has suffered and will continue to suffer severe emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

122.    The acts of Defendants described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of R.Z., thus entitling her to an award of punitive damages against Defendants.

123.    If R.Z. prevails, she is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff R.Z. prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to her physical injury and suffering, medical expenses, and her emotional pain and suffering; for punitive damages against Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER MISSOURI LAW
### (By Plaintiff R.Z. against all Defendants)

For Count IV of her cause of action against all Defendants, Plaintiff R.Z. states as follows:

124.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

125.    Defendants knowingly and intentionally engaged in deplorable treatment and bodily harm of Ms. Brown in full view of her minor daughter, R.Z.

126.    Defendants used familial leverage to elicit information from both Ms. Brown and

R.Z., threatening foster care and separation for non-compliance.

127.    The actions of Defendants were intended to, and in fact did, cause eleven-year-old R.Z. to suffer severe emotional distress.

128.    Since the incident, R.Z. has suffered from nightmares, paranoia, depression, anxiety, insomnia, and other symptoms and manifestations of post-traumatic stress.

129.    Additionally, R.Z.'s demeanor has become pessimistic and her academic performance suffered because these psychological symptoms interfere with her ability to focus on schoolwork.

130.    R.Z. lost friends who heard about her mother's arrest.

131.    R.Z. has had to take psychiatric medications to manage her symptoms, and requires significant long-term psychological therapy.

132.    To make matters worse, following the May 19, 2014 incident, R.Z. has witnessed on numerous occasions a Pine Lawn patrol car parked at the end of her street, in direct view of and facing directly toward the Brown's residence, further perpetuating her trauma.

133.    The conduct of Defendants was reckless and callously indifferent to the rights of Plaintiff R.Z., malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacity and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff R.Z. prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to the psychological injury and suffering, medical expenses, and emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems

fair and appropriate under the circumstances.

**COUNT V**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER MISSOURI LAW**
**(By Plaintiff R.Z. against all Defendants - Pleaded in the Alternative to Count IV)**

For Count V of her cause of action against all Defendants, Plaintiff R.Z. states in the alternative to Count IV as follows:

134.    Plaintiff R.Z. incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

135.    Defendants knowingly engaged in their deplorable treatment and bodily harm of Ms. Brown in full view of her minor daughter, R.Z.

136.    Defendants used familial leverage to elicit information from both Ms. Brown and R.Z., threatening foster care and separation for non-compliance.

137.    Any reasonable person would expect an eleven-year-old minor placed in R.Z.'s position to suffer severe emotional distress as a result of the actions of Defendants.

138.    Since the incident, R.Z. suffers from nightmares, paranoia, depression, anxiety, insomnia, and other symptoms and manifestations of post-traumatic stress.

139.    Additionally, R.Z.'s demeanor has become pessimistic and her academic performance suffered because these psychological symptoms interfere with her ability to focus on school work.

140.    R.Z. lost friends who heard about her mother's arrest.

141.    R.Z. has had to take psychiatric medications to manage her symptoms, and requires significant long-term psychological therapy.

142.    To make matters worse, following the May 19, 2014 incident, R.Z. has witnessed on numerous occasions a Pine Lawn patrol car parked at the end of her street, in direct view of

and facing directly toward the Brown's residence, further perpetuating her trauma.

143.    The conduct of Defendants was reckless and callously indifferent to the rights of Plaintiff R.Z., malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacity and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff R.Z. prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to the psychological injury and suffering, medical expenses, and emotional pain and suffering; for punitive damages against Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

### COUNT VI
### FALSE IMPRISONMENT UNDER MISSOURI LAW
#### (By Plaintiff R.Z. against all Defendants)

For her cause of action against all Defendants in Count VI, Plaintiff R.Z. states as follows:

144.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

145.    Defendants intentionally restrained and confined R.Z. against her will when they removed R.Z. from the safe and familiar custody of her adult neighbor; took control of R.Z. in Ms. Brown's front yard; confined R.Z. inside the living room of the residence at 3743 Salome; placed R.Z. in a Pine Lawn police car; and then held R.Z. in a Pine Lawn Jail interrogation room.

146.    R.Z. did not consent to Defendants' actions in removing and confining her in the manner described above, nor in any manner whatsoever.

147.    There was no lawful justification for Defendants restraining and confining R.Z. in the above manner.

148.    Defendants held R.Z. in confinement for a substantial period of time spanning several hours.

149.    Defendants' explicit and express purpose for removing and confining R.Z. was to hold R.Z. as leverage to cause R.Z.'s father, Ronald Zimmerman, to perform a certain act—namely, to come to the Pine Lawn Jail and submit himself to the Defendants—and for the purpose of terrorizing R.Z., Ms. Brown, and Ronald Zimmerman.

150.    As a direct and proximate result of the false imprisonment of R.Z. by Defendants, R.Z. suffered severe emotional distress, pain and suffering, and anguish at the time of the incident and continuing to present day.

151.    The actions of Defendants in causing the false imprisonment of R.Z., as set forth above, were carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of R.Z., thereby entitling her to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff R.Z. prays for judgment against Defendants, jointly and severally, for compensatory damages in an amount which is fair and reasonable, for punitive damages against Defendants in their individual capacities, and for such other and further relief as this Court deems fair and appropriate under the circumstances.

## COUNT VII
## MALICIOUS PROSECUTION – COGNIZABLE UNDER 42 U.S.C. § 1983
### (By Plaintiff Roslyn Brown against All Defendants)

For her cause of action against all Defendants in Count VII, Plaintiff Roslyn Brown states as follows:

152.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of her Complaint as if fully set forth herein.

153.    The Defendants, acting individually or together and in concert, caused to be issued and assisted in the prosecution of the following charges against Ms. Brown:

      a.   "Fail to Comply with Officer" charge;
      b.   "No Occupancy Permit" charge; and
      c.   Thirty-one (31) other "Housing Code Violation" charges.

154.    Defendants were not motived in the pursuit of quasi-criminal charges against Ms. Brown by a belief that the charges had any factual or legal merit or that probable cause existed before their issuance, but rather by malicious, improper, illegal, and unconstitutional purposes, including but not limited to the following:

      a.   Defendants sought to protect themselves from civil and/or criminal liability for the unlawful treatment of Ms. Brown and her minor child, R.Z., and for their misconduct as described above, by initiating falsified charges against Ms. Brown;

      b.   Defendants sought to punish Ms. Brown for exercising legally and constitutionally-protected rights; and

      c.   Defendants sought to obscure the fact that they engaged in unconstitutional behavior in an attempt to make contact with and apprehend Ronald Zimmerman.

155.    Defendants falsified their official reports and summonses and caused charges to be prosecuted for over one year in an attempt to secure a conviction against Ms. Brown.

156.    The conduct of Defendants as described above violated Ms. Brown's right to be free from unreasonable and unlawful seizure, secured by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

157.    On July 2, 2015, the prosecuting attorney declined to prosecute *all* thirty-three (33) of the malicious charges.

158.    As a direct result of Defendants' misconduct, which constituted malicious prosecution in violation of Ms. Brown's constitutional rights, Ms. Brown suffered damages including, but not limited to:

      a.  Ms. Brown was forced to expend time at court appearances and in consult with an attorney to defend herself against the charges;

      b.  Ms. Brown incurred legal defense fees of $750.00; and

      c.  Ms. Brown experienced significant stress and mental anguish.

159.    The actions of Defendants in maliciously prosecuting the charges against Ms. Brown were carried out under color of law and pursuant to the Defendants' authority as Pine Lawn Police Officers and as the Pine Lawn Housing Inspector.

160.    The acts of Defendants as described above were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Ms. Brown, thus entitling Ms. Brown to an award of punitive damages against the individually-named Defendants.

161.    If Ms. Brown prevails, she is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Roslyn Brown prays for judgment in favor of Ms. Brown and against all Defendants for actual damages, compensatory damages, attorneys' fees, expenses, and costs; punitive damages against all Defendants in their individual capacities; and for any other relief this Court deems just and appropriate.

**COUNT VIII**
**ABUSE OF PROCESS UNDER MISSOURI LAW**
**(By Plaintiff Roslyn Brown against all Defendants)**

For her cause of action against all Defendants in Count VIII, Ms. Brown states as follows:

162.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

163.    On information and belief, the purpose of Defendants in instigating and continuing the prosecutions against Ms. Brown, where there was no evidence whatsoever supporting any of the alleged charges or conduct by the accused, was in order to (1) harass, intimidate, and punish Ms. Brown and her family; and/or (2) achieve conviction of Ms. Brown in an effort to avoid civil or criminal liability for the injuries and civil rights violations caused by Defendants against Ms. Brown—both of which constitute improper collateral purposes.

164.    The actions of Defendants in falsely implicating Ms. Brown in the activities charged as set forth above constituted an improper use of process that was neither warranted nor authorized by law.

165.    Defendants abused legal process for an unlawful purpose and with an illegitimate and collateral objective, and have acted willfully and with an ulterior motive in their use of legal process, in that Defendants used legal process through their authority for purposes other than legitimately investigating and prosecuting criminal acts.

166.    At all relevant times, the individual Defendants were acting within the course and scope of their employment and/or agency relationship with the City of Pine Lawn, and acted as the employees, servants and agents of Pine Lawn and its representatives.

167.    As a result of Defendants' abuse of process against Ms. Brown, Ms. Brown was

damaged, including being forced to defend the utterly baseless charges brought against her.

168.    Defendants' abuse of process, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Ms. Brown, thereby entitling Ms. Brown to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Roslyn Brown prays for judgment in favor of Ms. Brown and against all Defendants for actual damages, compensatory damages, attorneys' fees, expenses, and costs; punitive damages against all Defendants in their individual capacities; and for any other relief this Court deems just and appropriate.

**COUNT IX**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS –**
**COGNIZABLE UNDER 42 U.S.C. § 1983**
**(By Plaintiffs Roslyn Brown and R.Z. against all Defendants)**

For Count IX of their cause of action against all Defendants, Plaintiffs state as follows:

169.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

170.    Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston, acting in their individual capacities and under color of law, conspired together and reached a mutual understanding to undertake a course of conduct that violated Plaintiffs' civil rights. In furtherance of this conspiracy, Defendants committed the following overt acts:

      a.    Defendants unlawfully searched, seized, used excessive force upon, and detained Ms. Brown in the Pine Lawn Jail.

      b.    Defendants unlawfully seized, transported, and detained R.Z. in the Pine Lawn Jail.

      c.    Defendants, acting in concert, intentionally fabricated and contrived one Failure to Comply charge and thirty-two (32) housing-code violations against Ms. Brown with the expectation

and for the purpose that if a conviction were secured against Ms. Brown, the Defendants would be insulated from future civil or criminal liability for their unconstitutional actions.

d.   Defendants adhered to a code of silence regarding the truth about the constitutional violations and unlawful behavior of the Defendants. Defendants refused to report the misconduct and excessive force used against Ms. Brown and R.Z. as afore described to other supervisory or command personnel within the Defendant City of Pine Lawn. Defendants likewise concealed the improper motive for their unconstitutional acts: to make contact with and apprehend Ronald Zimmerman.

171.    Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston shared the conspiratorial objectives, which were to punish Ms. Brown for her non-compliance as well as for her affiliation with Ronald Zimmerman, to secure the appearance of Mr. Zimmerman, and to avoid punishment for such abuse by maliciously fabricating and supporting the prosecution of false charges against Ms. Brown.

172.    As a direct and proximate result of the conspiracy between Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston as described above, Plaintiffs' Fourth and Fourteenth Amendment rights to be free from the use of excessive force and unreasonable search and seizure were violated by Defendants.

173.    As a direct and proximate result of the actions of Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston, Plaintiffs suffered and will continue to suffer physical pain and injury, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

174.    The acts of Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of Plaintiffs, thus entitling them to an award of punitive damages against Defendants.

175.    If Plaintiffs prevail, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs Roslyn Brown and R.Z. pray for a judgment against Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to physical injury and suffering, medical expenses, and emotional pain and suffering; for punitive damages against Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

**COUNT X**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**
**(By Plaintiffs Roslyn Brown and R.Z. against the Defendant City of Pine Lawn)**

For Count X of their cause of action against the Defendant City of Pine Lawn, Plaintiffs state:

176.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

177.    At all times relevant to this Complaint, Defendants Blakeney, Fleming, Britton, Shelton, Lowman, as sworn members of the Pine Lawn Police Department, and Defendant Winston, as the Pine Lawn Housing Inspector, were acting pursuant to either official policies, or customs, practices, and usages so pervasive as to constitute policies, of the Defendant City of Pine Lawn, and Pine Lawn is therefore culpable pursuant to *Monell v. N.Y. Dep't of Soc. Svcs*, 436 U.S. 658 (1978), and its progeny.

178.    In the alternative, Pine Lawn was deliberately indifferent in its duty to correct, supervise, control and, when appropriate, discipline their officers who have committed these acts

which violate the Fourth and Fourteenth Amendments. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

179.    Pine Lawn has the power and responsibility to prevent the existence of the policies and practices described above and has failed and refused to do so.

180.    There exist within Pine Lawn pervasive policies or customs, practices and usages that caused the constitutional deprivations of the Plaintiffs as set forth herein. The policies, customs, practices, and usages that exist are:

     a.  To arrest individuals without reasonable cause or provocation and in violation of their constitutional rights;

     b.  To ignore the policies and procedures of Pine Lawn by encouraging and/or permitting the unlawful arrests of individuals, particularly African-American residents;

     c.  To engage in a course of conduct designed to cover-up and insulate officials from sanctions both civil and criminal when targeting innocent individuals, particularly African-American residents; and

     d.  To fail to adequately train, supervise, and/or discipline police officers and/or Pine Lawn officials concerning the practices afore-described to assure compliance.

181.    Alternatively, and without waiver of the foregoing, Pine Lawn's training program was not adequate to train its officers and officials to properly handle reoccurring situations like the one involving the Plaintiffs, and therefore, Pine Lawn had a policy or custom of failing to adequately train its employees and officials.

182.    Pine Lawn knew that more and/or different training was needed to avoid the unlawful arrests and other constitutional deprivations suffered by individuals like the Plaintiffs.

183.    Pine Lawn is ultimately vested with the duty, power, and authority to train, supervise, discipline, and otherwise control its police officers.

184.    Pine Lawn failed in its duty to so train, supervise, and discipline Defendants in

general, and specifically so as to conform their conduct with constitutional requirements when it:

    a. failed to adequately train, supervise, and discipline police officers in the proper and lawful arrests of subjects;

    b. failed to train, supervise, and discipline officers with regard to the duty to intervene and/or report transgressions, and to truthfully respond to inquiries; and

    c. knew that Defendant Blakeney had a long history of misconduct and constitutionally violative behavior but not only failed to discipline and correct him, but also rewarded him by promoting him to be the de facto Chief of Police for the Pine Lawn Police Department.

185.    The acts of the individual Defendants Blakeney, Fleming, Britton, Shelton, Lowman, and Winston as set forth herein were taken under color of state law.

186.    As a direct and proximate result of the actions, policies, and practices of the Defendant City of Pine Lawn as set forth herein, Plaintiffs have been damaged by physical injury, pain and suffering, emotional damages, pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

187.    If Plaintiffs prevail, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs pray for judgment against the Defendant City of Pine Lawn seeking compensatory damages in an amount that is fair and reasonable; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## **FINDER OF FACT**

188.    Plaintiffs demand a jury trial of all issues properly triable by jury.

Date submitted: September 18, 2017

Respectfully submitted,
**ArchCity Defenders, Inc.**

By: */s/ Blake A. Strode* _____
    Thomas B. Harvey (MBE #61734MO)
    Michael John Voss (MBE #61742MO)
    Blake A. Strode (MBE #68422MO)
    Nathaniel R. Carroll (MBE #67988MO)
    1210 Locust Street, 2nd Floor
    Saint Louis, MO 63103
    855-724-2489 ext. 1015
    314-925-1307 (fax)
    tharvey@archcitydefenders.org
    mjvoss@archcitydefenders.org
    bstrode@archcitydefenders.org
    ncarroll@archcitydefenders.org

    *Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that notice of filing and a copy of foregoing was served on all counsel of record via this Court's electronic PACER/ECF filing and notification system, except for the following party who was served by United States Mail on this 18th day of September, 2017:

***LEGAL MAIL***
Steven Blakeney, Inmate #42856-044
FCI Elkton
P.O. Box 129
Lisbon, OH 44432

                    */s/ Blake A. Strode* _____