# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ROSLYN BROWN, et al., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | No. 4:17CV01542 ERW |
| | ) | |
| CITY OF PINE LAWN, MISSOURI, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motions to Dismiss Parties [18, 31, 44].

## I. BACKGROUND

On May 19, 2017, Plaintiffs Roslyn Brown and R.Z., a minor, through her Mother and Next Friend, Roslyn Brown (the "Plaintiffs"), filed this civil action seeking damages against the City of Pine Lawn; Police Officers Steven Blakeney, Lawrence Fleming, Brian Britton, Felicia Shelton, and Steven Lowman; and Pine Lawn Housing Inspector Raymond Winston. On August 18, 2017, the City of Pine Lawn, Fleming, Britton, Lowman, and Winston filed a joint Motion to Dismiss [18] all claims against them.

In response, Plaintiffs filed a First Amended Complaint [24] including ten causes of action against Defendants: Count I: Unlawful Use of Excessive Force – Cognizable under 42 U.S.C. § 1983 (by Plaintiff Roslyn Brown against Defendant Britton); Count II: Unlawful Search and Seizure – Cognizable Under 42 U.S.C. § 1983 (by Plaintiff Roslyn Brown against all Defendants); Count III: Unlawful Seizure – Cognizable Under 42 U.S.C. § 1983 (by Plaintiff R.Z. against all Defendants); Count IV: Intentional Infliction of Emotional Distress Under

Missouri Law (by Plaintiff R.Z. against all Defendants); Count V: Negligent Infliction of Emotional Distress under Missouri Law (by Plaintiff R.Z. against all Defendants); Count VI: False Imprisonment Under Missouri Law (by Plaintiff R.Z. against all Defendants); Count VII: Malicious Prosecution – Cognizable Under 42 U.S.C. § 1983 (by Plaintiff Roslyn Brown against All Defendants); Count VIII: Abuse of Process Under Missouri Law (by Plaintiff Roslyn Brown against all Defendants); Count IX: Conspiracy to Violate Civil Rights – Cognizable Under 42 U.S.C. § 1983 (by Plaintiffs Roslyn Brown and R.Z. against all Defendants); and Count X: Municipal Liability Under 42 U.S.C. § 1983 (by Plaintiffs Roslyn Brown and R.Z. against the Defendant City of Pine Lawn).

On October 9, 2017, Fleming, Lowman, and Winston filed a Motion to Dismiss [32] all claims against them, and on November 27, 2017, Blakeney filed a Motion to Dismiss [45] all claims against him. Plaintiffs have filed memoranda in opposition to both motions. For purposes of Defendants' Motions to Dismiss, the Court accepts as true the following facts alleged in Plaintiffs' First Amended Complaint. *See Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010).

On Monday, May 19, 2014, Lieutenant Steven Blakeney ("Blakeney") approached Ms. Brown's residence located in the City of Pine Lawn, Missouri. Blakeney was accompanied by several other Pine Lawn Police Officers: Detective Lawrence Fleming ("Fleming"), Officer Brian Britton ("Britton"), Officer Felicia Shelton ("Shelton"), and Officer Steve Lowman ("Lowman"). Blakeney asked Ms. Brown the whereabouts of Ronald Zimmerman ("Zimmerman"), the owner of the residence, and Ms. Brown stated she did not know. Blakeney then yelled at Ms. Brown, demanding she give him information about Zimmerman. He told her if she did not provide the information, he would write her a summons, she would have to pay

significant sums of money, and the police officers would continue to come to the residence and harass her.

When Ms. Brown did not provide him with the information, Blakeney told her to produce proof of her identification, so he could write her a summons. Ms. Brown went to retrieve her proof of identification, shutting the glass storm door but leaving the main door open so she could remain visible. Blakeney then charged at the closed storm door in an attempt to break it down, breaking the locking mechanism in the process. Ms. Brown was shocked and frightened, and she came out onto the porch, closing both doors behind her. Blakeney shouted, "Arrest her!" Britton, using great force, yanked Ms. Brown's arms behind her back, handcuffed her, and had her walk to the patrol car. Ms. Brown was not wearing shoes and did not have her cane. Shelton escorted her to the patrol car and carried her cane. Both Shelton and Ms. Brown stated Ms. Brown needed her shoes and cane to walk safely and comfortably, and Britton responded, "She's gonna walk today!" Lowman and Fleming stood by and watched the arrest. As Ms. Brown was being taken to the patrol car, Blakeney entered the residence, followed by Fleming.

Once Ms. Brown was in the patrol car, all of the officers entered the residence and began "ransacking" it. Housing Inspector Raymond Winston shortly arrived and joined the others in "raiding" the home. From the patrol car, Ms. Brown asked Shelton if she could make arrangements for R.Z., her eleven-year-old daughter. R.Z. was crying and sitting on the porch of her grandfather's house, which was located next door to Ms. Brown's residence. Ms. Brown shouted across the street to a neighbor ("Neighbor"), asking Neighbor to take R.Z. safely into Neighbor's house. Neighbor began to walk across the street, and R.Z. walked off the porch and into her grandfather's yard, approaching Neighbor. At this point, Blakeney and Britton exited Ms. Brown's residence.

3

Blakeney and Britton intercepted R.Z. before Neighbor could, grabbing R.Z. by the upper left arm and leading her into Ms. Brown's residence. Blakeney yelled at R.Z., "Where's your father? Where does he work? I know you know something!" R.Z. cried and said she did not know. Blakeney told the others R.Z. was Zimmerman's daughter. Britton forced R.Z. to unlock Ms. Brown's cell phone without Ms. Brown's consent. Britton answered an incoming call from Zimmerman without permission. In front of R.Z., Britton told Zimmerman, "Everyone's going to jail today. Your daughter is going to foster care. What kind of father are you? Come and get your daughter." While in the home, all officers and Winston held R.Z. down and forced her to watch the scene.

At one point, Winston and Shelton asked Ms. Brown for her consent to search the home, and Ms. Brown refused to give it, claiming she was not the homeowner. Winston then threatened Ms. Brown, saying he would condemn the home if she did not consent and that she would not be able to get back inside to retrieve any of her belongings. Shelton added Ms. Brown would never be able to get back inside the house. Ms. Brown then consented to their entry.

Britton eventually came out of the home and approached the police car. He informed Ms. Brown that R.Z. would also be escorted to the Pine Lawn Jail. Ms. Brown objected and stated Neighbor was permitted to have custody of R.Z. at that time. Britton told Ms. Brown he was "just following orders" and if she "didn't like it, [she] could take it to the next level."

Britton escorted R.Z. to the police car and placed her in its front seat. The officers took Ms. Brown and R.Z. to the Pine Lawn Jail, with Britton driving the patrol car. At the Pine Lawn Jail, Britton and Fleming escorted R.Z. into an interrogation room and Ms. Brown to a holding cell. Lowman and Shelton stated they were confused as to which charges they should include on Ms. Brown's citations. Blakeney told them, "She should have told me where he is." They

eventually charged her with "Failure to Comply" and 32 housing citations. After approximately one hour, R.Z.'s grandfather arrived at the Pine Lawn Jail to pick up R.Z. and take her into his care. After several hours, Ms. Brown was released on medical recognizance.

Prior to May 19, 2014, Ms. Brown had been instructed by her doctor to keep her arm in a straight position so her elbow and wrist would be ready for an upcoming surgery. The surgery ultimately had to be delayed because of injuries Ms. Brown sustained during her arrest. Ms. Brown states she has experienced "significant physical injury and pain and suffering, as well as emotional trauma and suffering." She states Defendants have caused R.Z. to experience "extreme emotional trauma and distress, including depression, anxiety, and night terrors, all of which continue to persist and interfere with R.Z.'s life." The charges against Ms. Brown were eventually dismissed after Ms. Brown hired private counsel.

## II. STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

### III. DISCUSSION

There are three pending motions to dismiss party defendants before this Court. The motion first filed in time, the Motion to Dismiss Party Defendants City of Pine Lawn, Fleming, Britton, Lowman, and Winston [18], was mooted by Plaintiffs filing their First Amended Complaint. Accordingly, this Court denies that motion. This leaves two remaining motions: the Motion to Dismiss Party Defendants Fleming, Lowman, and Winston [32] and the Motion to Dismiss Party Defendant Blakeney [44]. Because both motions generally assert the same grounds for dismissal, this Court will address them concurrently.

#### A. *Failure to Allege Facts Giving Rise to Plausible Claims Under § 1983*

Blakeney, Fleming, Lowman, and Winston (hereafter collectively, "Defendants") argue Plaintiffs have failed to allege facts sufficient to state any of the § 1983 claims Plaintiffs bring against them. Section 1983 creates a remedy to redress a deprivation of a federally protected right by a person acting under color of state law. *Jones v. United States*, 16 F.3d 979, 981 (8th

Cir.1994). Generally, government officials are protected from liability in a § 1983 action under the doctrine of qualified immunity. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir.2010). To determine whether a government official is protected by qualified immunity, courts should ask (1) whether the facts alleged establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir.2012) (internal quotation marks and citation omitted).[1]

### 1. Unlawful Search of Ms. Brown

Defendants argue Ms. Brown has failed to state a claim Defendants unlawfully searched her home. "The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. U.S.*, 533 U.S. 27, 31 (2001) (internal quotations and alterations omitted) (quoting *Silverman v. U.S.*, 365 U.S. 505, 511 (1961)). Where the police have entered a house without a warrant, the government has the burden to prove the police acted pursuant to a valid exception to the warrant requirement. *U.S. v. Spotted Elk*, 548 F.3d 641, 651 (8th Cir. 2008).

---

[1] This Court acknowledges Winston acted as a housing inspector, rather than a police officer. Accordingly, it is unclear whether Winston, a housing inspector, was acting in this role and under "the color of the law" when he allegedly raided the property, or whether he was acting as a private third-party agent for the police. However, this issue was not raised in briefing, and thus this Court will not address it now.

Here, Plaintiffs have alleged: (1) Blakeney, acting without a warrant, broke the lock to the home; (2) all the police officers and Winston entered it without a warrant; and (3) all the police officers and Winston then "ransacked" the home. This is sufficient to establish a § 1983 claim of unlawful search. Further, under these facts, Blakeney, Fleming, Lowman, and Winston would have known their actions were violating Ms. Brown's clearly established right to be free of an unreasonable search of her home and are accordingly not entitled to qualified immunity. Therefore, this Court will deny Defendants' motions to dismiss this claim against them.

### 2. Unlawful Seizure of Ms. Brown and R.Z.

Defendants similarly state Plaintiffs have failed to allege a plausible claim that Defendants unlawfully seized both Ms. Brown and R.Z. The Fourth Amendment provides protection to persons against the unlawful seizure of the person. *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968) ("No right is more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from the restraint or interference of others, unless by clear and unquestionable authority of law.") (quoting Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251 (1891)). A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all circumstances surrounding the incident, a reasonable person would not feel free to leave. *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991). However, only alleging a seizure occurred is insufficient to establish liability under § 1983. *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir.2003). The seizure must also be unreasonable, which is determined in light of the totality of the circumstances. *Id.*

Regarding Ms. Brown's arrest, Plaintiffs have alleged Ms. Brown was arrested, escorted to the patrol car, forced to sit in the patrol car, driven to the Pine Lawn Jail, and remained in a holding cell for several hours. By these facts, a reasonable person in Ms. Brown's position would

not feel free to leave, and she was indeed seized. Ms. Brown has likewise alleged enough facts to support a plausible claim that her seizure was unreasonable. "[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981); *see also Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Here, Ms. Brown has alleged she gave the officers no reason to believe she had committed even a minor criminal offense, which would support probable cause for her arrest. Rather, she alleges, she was arrested in retaliation for not providing the officers with the sought-after information. Therefore, Ms. Brown has allegeed enough facts to support a claim that she was deprived of her right to be free from unreasonable seizure.

She has not, however, alleged facts which would implicate *all* Defendants in her unlawful arrest. She has failed to allege any facts which indicate Winston, a housing inspector, participated in the arrest at all, and they merely allege Lowman and Fleming "stood idly by" watching the arrest and failed to "intervene in any way." While the Eighth Circuit has held "[a] law enforcement officer who knows another officer is using excessive force has a duty to intervene," it has declined to recognize an officer's duty to intervene to prevent other constitutional violations. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *see also Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013). Thus, even if such a duty exists outside of the excessive force context, it was not "clearly established" at the time of Ms. Brown's arrest, and the officers would be protected by qualified immunity. *See id.* This Court accordingly finds Ms. Brown has failed to state a viable § 1983 claim of unlawful seizure of her body against Winston,

9

Fleming, and Lowman, and these defendants will be dismissed from that claim.

Regarding the liability of Blakeney, Plaintiffs state while Britton physically arrested Ms. Brown, he did so under the direct orders of Blakeney, his supervisor. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). It is clear Blakeney's action led to the arrest of Ms. Brown, and thus, Blakeney was directly involved in and caused the alleged constitutional violation.[2] Further, he would have known his ordering the arrest violated Ms. Brown's clearly established right to be free of an unreasonable seizure of her person, and accordingly, he is not entitled to qualified immunity. This Court will deny the motion to dismiss this claim against Blakeney.

Regarding the arrest of R.Z., R.Z. has alleged: (1) Blakeney forcefully grabbed R.Z. and led her into the residence; and (2) all the officers and Winston "held R.Z. in place and forced her to watch the scene unfold inside the [r]esidence." Under these facts, a reasonable person would not feel free to leave, and a seizure occurred. Further, her seizure was unreasonable as there was no reasonable suspicion or probable cause indicating R.Z. was involved in criminal activity. *See Gainor v. Rogers*, 973 F.2d 1379, 1387 (8th Cir. 1992) ("It is fundamental that an arrest violates the Fourth Amendment when there exists no reasonable suspicion or probable cause that an individual is engaged in criminal activity."). Accordingly, this Court will deny Defendants' motions to dismiss this claim.

### 3. Malicious Prosecution of Ms. Brown

Defendants state Ms. Brown has not alleged sufficient facts to support her § 1983 claim

---

[2] Though Blakeney argues he cannot be held liable for the actions of his subordinates, Plaintiffs have not sought liability based on Blakeney's supervisory role. Rather, they allege Blakeney himself personally and directly committed the alleged constitutional violations.

of malicious prosecution because the Eighth Circuit has rejected the viability of malicious prosecution claims under § 1983, citing *Joseph v. Allen*, 712 F.3d 1222 (8th Cir. 2013), and *Kurtz v. City of Shrewsburty*, 245 F.3d 753 (8th Cir. 2001). While the Eighth Circuit did affirm summary judgment against the plaintiffs' § 1983 malicious prosecution claims in both cases cited by Defendants, it did so because, on the particular facts of those cases, the plaintiffs could not establish any other underlying constitutional violations. *See Joseph*, 712 F.3d at 1228 (citing *Kurtz*, 245 F.3d at 758) ("an allegation of malicious prosecution *without more* cannot sustain a civil rights claim under § 1983") (emphasis added). Indeed, though it has expressed its doubts, the Eighth Circuit has left open the possibility of a malicious prosecution claim under § 1983, as either a Fourth Amendment violation of a substantive right or a procedural due process violation, where plaintiffs have alleged an underlying cognizable constitutional violation. *See, e.g., Bates v. Hadden*, 576 Fed. Appx. 636, 639 (8th Cir. 2014); *Harrington v. City of Council Bluffs, Ia.*, 678 F.3d 767, 679 (8th Cir. 2012) ("If malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment."); *Kurtz*, 245 F.3d at 758; *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990) (finding the plaintiff's malicious prosecution claim may be taken as a claim for the violation of procedural due process rights or substantive due process rights).

This Court finds Ms. Brown has alleged a cognizable claim of unlawful search against Blakeney, Winston, Fleming, and Lowman. Ms. Brown alleges the unlawful search provided the basis for a "no occupancy permit" charge and thirty-one other housing code violations and that these charges were in retaliation for Ms. Brown failing to provide the officers with the location of her husband. Read in light most favorable to Ms. Brown, her malicious prosecution claim may support a procedural or substantive due process violation. *See Brittingham v. McConnell*, 2:13-

CV-00089, 2014 WL 4912184, *5 (Mo. E.D. Sept. 30, 2014).

Defendants state even if there is a cognizable claim for malicious prosecution under § 1983, qualified immunity protects them from liability because that right was not "clearly established" at the time of the challenged conduct. However, "[e]ven in the complete absence of any decisions involving similar facts, a right can be clearly established if a reasonable public official would have known h[is] conduct was unconstitutional." *Vaughn v. Ruoff*, 253 F.3d 1124, 1130 (8th Cir. 2001); *see also Moran v. Clarke*, 359 F.3d 1058, 1060-61 (8th Cir. 2004) ("The absence of a factually similar case does not guarantee government officials the shield of qualified immunity, especially in the substantive due process context."). Accordingly, at this stage, this Court does not find Defendants are protected under qualified immunity, *see Brittingham*, 2014 WL 4912184, at *5, and this Court will deny Defendants motions to dismiss this claim.

### 4. Conspiracy to Violate Civil Rights of Ms. Brown and R.Z.

Defendants allege Plaintiffs have not sufficiently pleaded the necessary factual elements for a § 1983 conspiracy claim. To establish a conspiracy claim under § 1983, plaintiffs must allege "specific facts" showing "'there was a mutual understanding, or a meeting of the minds' among the alleged conspirators." *Schwartz v. Pridy*, 874 F.Supp. 256, 258 (8th Cir. 1995) (quoting *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993). Plaintiffs' First Amended Complaint does not contain factual allegations showing any of the Defendants had a "meeting of the minds" with respect to the alleged violations of their criminal rights. Accordingly, Plaintiffs'§ 1983 conspiracy claim against Blakeney, Winston, Lowman, and Fleming will be dismissed.

### C. *Failure to State Plausible State Tort Theories*

#### 1. Intentional Infliction of Emotional Distress of R.Z.

Defendants argue R.Z. has failed to state a claim for Intentional Infliction of Emotional Distress (IIED). To establish a claim for IIED under Missouri law, plaintiffs must allege (1) the defendants' conduct was extreme and outrageous; (2) the conduct was intentional or reckless; and (3) the conduct caused severe emotional distress that resulted in bodily harm. The defendant's conduct must be more than simply malicious or intentional conduct, and instead "be so outrageous in character, and so extreme in degree, as to go beyond the possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. App. 2002). Finally, the plaintiff must show the defendant's sole motivation was to cause emotional distress to the plaintiff. *See Fischer v. Steward*, 4:07-CV-01798, 2010 WL 147865, at *14 (ED Mo. Jan. 11, 2010) ("[A]n IIED claim is not viable 'where the conduct was intended to invade other legally protected interests of the plaintiff or to cause bodily harm.'") (quoting *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. App. 1998)). This is to keep the tort from overlapping with other existing causes of action. *Id.*

This Court finds R.Z. has failed to show Defendants' sole motivation for the conduct they allege is extreme and outrageous was to cause her emotional distress. To the contrary, several times throughout their First Amended Complaint, Plaintiffs expressly acknowledge Defendants committed such conduct because they were attempting to elicit information from both Ms. Brown and R.Z, particularly the location of R.Z.'s father. Accordingly, R.Z.'s IIED claim against Blakeney, Lowman, Winston, and Fleming will be dismissed.

### 2. Negligent Infliction of Emotional Distress of R.Z.

Defendants likewise argue R.Z. has failed to state a claim for Negligent Infliction of Emotional Distress (NIED). The following elements are required to establish a claim of NIED:

13

(1) the defendants "realized or should have realized that their conduct involved an unreasonable risk of causing distress;" (2) the plaintiff "suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant." *Gordon v. City of Kansas City, Mo.*, 241 F.3d 997, 1004 (8th Cir. 2001).

Here, R.Z. has alleged Blakeney grabbed her., forced her into Ms. Brown's residence, and shouted at her and interrogated her about the location of her father without a parent present. She also alleges all Defendants "held R.Z. in place and forced her to watch the scene unfold inside the [r]esidence" without a parent present. Under these facts, Defendants should have known they were taking the unreasonable risk of causing R.Z. distress for the sole purpose of getting the information of her father's whereabouts. R.Z. has further claimed that since the incident, she suffers from "nightmares, paranoia, depression, anxiety, insomnia, and other symptoms and manifestations of post-traumatic stress." Accordingly, both elements are satisfied at this stage, and this Court will deny Defendants' motions to dismiss this claim.

### 3. False Imprisonment of R.Z.

Defendants claim R.Z. has failed to establish a claim for false imprisonment. In order to successfully establish a claim for false imprisonment, a plaintiff must allege sufficient facts that (1) the plaintiff was detained or restrained against her will and (2) the detention or restrain was unlawful. *Sastry v. City of Crestwood*, 4:10-CV-215, 2011 WL 2938163 (ED Mo. July 19, 2011). R.Z. has stated she was grabbed by Blakeney and Britton as she was trying to walk to Neighbor's home and was then led into Ms. Brown's residence. She has also alleged all Defendants "held R.Z. in place and forced her to watch the scene." She indicates R.Z. was detained solely so that the officers could acquire information on her father's whereabouts. This Court has already found this is enough to establish an unlawful seizure claim under § 1983. Thus, under these facts, read

in the light most favorable to R.Z., R.Z. has sufficiently alleged a claim for false imprisonment against Defendants, and this Court will deny Defendants' motions to dismiss this claim.

### 4. Abuse of Process

Defendants argue Ms. Brown has failed to allege sufficient facts to establish a claim for abuse of process. Under Missouri law, a claim for abuse of process requires the plaintiff to allege "(1) the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. banc 1990) (citations omitted); *see also Nitcher v. Does*, 956 F.2d 796, 799 (8th Cir. 1992). "The phrase 'use of process' as employed in that context" refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process." *Wells v. Orthwein*, 670 S.W.2d 529, 533 (Mo. App. 1984).

Here, Ms. Brown has alleged: (1) Blakeney ordered her arrest, (2) Fleming assisted in placing Ms. Brown in a holding cell, (3) Lowman assisted in writing up the citations and ordering Ms. Brown to sign them; and (4) Blakeney instructed the others on how to write up the citations. Ms. Brown has stated the purpose behind these charges was to "harass, intimidate, and punish Ms. Brown and her family; and/or (2) achieve conviction of Ms. Brown in an effort to avoid civil or criminal liability for the injuries and civil rights violations caused by Defendants against Ms. Brown. Ms. Brown finally states she was forced to defend herself against these charges that were eventually dropped by the prosecutor. Under these facts, Plaintiffs have made a sufficient claim of abuse of process under Missouri law. Accordingly, Defendants' motions to dismiss Ms. Brown's claim for abuse of process will be denied.

Thus, for the reasons stated above,

**IT IS HEREBY ORDERED** the Motion to Dismiss Party Defendants City of Pine Lawn, Fleming, Britton, Lowman, and Winston [18] is **DENIED as moot**.

**IT IS FURTHER ORDERED** the Motion to Dismiss Party Defendants Fleming, Lowman, and Winston [31] is **GRANTED in part** and **DENIED in part**. Defendants Fleming, Lowman, and Winston are dismissed from the § 1983 claim of unlawful seizure of Ms. Brown, the § 1983 conspiracy claim of both Plaintiffs, and the IIED claim of R.Z. Defendants Fleming, Lowman, and Winston are not dismissed from the § 1983 claim of unlawful search of Ms. Brown, the § 1983 claim of unlawful seizure of R.Z., the § 1983 malicious prosecution claim of both Plaintiffs, the NIED claim of R.Z., the false imprisonment claim of R.Z., and the abuse of process claim of Ms. Brown.

**IT IS FURTHER ORDERED** the Motion to Dismiss Party Defendant Blakeney [44] is **GRANTED in part** and **DENIED in part**. Defendant Blakeney is dismissed from the § 1983 conspiracy claim of both Plaintiffs, and the IIED claim of R.Z. Defendant Blakeney is not dismissed from the § 1983 claim of unlawful seizure of Ms. Brown, the § 1983 claim of unlawful search of Ms. Brown, the § 1983 claim of unlawful seizure of R.Z., the § 1983 malicious prosecution claim of both Plaintiffs, the NIED claim of R.Z., the false imprisonment claim of R.Z., and the abuse of process claim of Ms. Brown.

Dated this 20th Day of February, 2018.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE